**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MARY CASSELL,**

        Plaintiff,

vs.                                      Civ. No. 06cv119 ACT/LAM

**PRESBYTERIAN HEALTHCARE
SERVICES, et al.,**

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Presbyterian Healthcare Plan's ("PHP") Motion for Summary Judgment filed October 11, 2006. [Docket No. 25.] PHP is seeking summary judgment on the grounds that, based on the administrative record, its decision to deny coverage was not arbitrary or capricious. Upon review of the pleadings and being otherwise advised in the premises, the Court finds that PHP's Motion is well taken and will be granted.

*Undisputed material facts.*[1]

Plaintiff, Mary Cassell ("Cassell") was an employee of Travis M. Scott, Attorney at Law. PHP provided medical benefits to Plaintiff through an insurance plan entitled the Small Group HMO (Value Care) Benefit Plan Policy ("Plan"). PHP is the sponsor and claims administrator of the Plan. PHP, as the Plan administrator, has discretion to interpret the terms of the Plan and to determine

---

[1] The Court notes that the parties have asserted undisputed facts that are not material to the issues before the Court and therefore have not been included.

entitlement to Plan benefits, including whether services rendered by non-participating providers are reimbursable.

Plaintiff had a lesion in her left lung of less than 1 cm. that had been followed for 3-4 years. Plaintiff has a significant family history of cancer.

On March 23, 2005, a chest CT scan showed changes in the lesion.  The lesion was "1.5, almost 2cm."  Defendant's exhibit 3 at 129.  Dr. Dion Gallant, Plaintiff's primary care provider, referred Plaintiff to Southwest Pulmonary, a participating provider under the Plan, for follow up.

On April 26, 2005, Plaintiff was examined by Dr. Ronald Bronitsky of Southwest Pulmonary. Dr. Bronitsky concluded that the lesion was more than likely primary lung cancer and recommended a PET scan and surgical removal of the lesion.  In the "**RECOMMENDATIONS**" portion of his report Dr. Bronitsky wrote:

> The patient will be going to New York next week.  She wanted opinion by Sloan Kettering but they mentioned they would not see without a tissue diagnosis or a biopsy and I told them it (sic) because Sloan Kettering is a cancer center and they will not see her without a biopsy; however, I did not recommend percutaneous needled biopsy because regardless of the biopsy, this nodule needs to be removed and I think again the direct approach with excisional removal, possible curative resection and diagnostic resection, at that time is the preferred approach.  The patient will think this over.  We are scheduling a PET scan.  I am not sure when it will be done and I will see her back in 2-3 weeks or next week if she wants to talk about it further and again I strongly encouraged a second opinion with Sloan Kettering or other physicians in New York City if she can link with any.

*Id.* at 130.

Plaintiff asserts that she could not obtain an appointment for a PET scan until May 19, 2005. Defendant's exhibit 3 at 15.

On April 27, 2005, upon referral by Dr. Bronitsky, Plaintiff was seen by a PHP surgeon, Dr.

Peter Walinsky.[2]  Dr. Walinsky also recommended surgery to remove the lesion.  Plaintiff testified she was uncomfortable with Dr. Walinsky's experience because he has performed this type of surgery only during his residency and responded awkwardly to her questions.  Defendant's exhibit 2 at 5.

Plaintiff was not referred to an oncologist and Dr. Walinsky's opinion was that chemotherapy was not appropriate.  Defendant's exhibit 3 at 7.

On May 3, 2005, Plaintiff met with Drs. James Caravelli and Larry Norton at Memorial Sloan Kettering in New York and had CT and PET scans performed there.

On May 4, 2005, Plaintiff called PHP and asked about getting out-of-area treatment.  Plaintiff was advised that prior authorization was required.  Also on May 4, 2005, the pathology department at Memorial Sloan Kettering called PHP and asked if Plaintiff had out-of-network benefits.  The caller was informed that Plaintiff did not have out-of-network benefits.  Defendant's Exhibit 3 at 59 and 60.

On May 4, 2005, Plaintiff saw Dr. Valerie Rusch, chief of cardio-thoracic surgery at Memorial Sloan Kettering, for a consultation regarding her chest lesion. *Id.* at 11.

On May 5, 2005, Dr. Gallant, requested authorization for Plaintiff's consult with Dr. Rusch on May 4, 2005. *Id.* at 33.

On May 9, 2005, PHP Medical Director Albert Rizzoli, M.D. denied the request.  In his letter of May 11, 2005, Dr. Rizzoli wrote:

> "...we are unable to certify out of plan services as a covered benefit when prior authorization was not obtained before services rendered."
> "Also, your Presbyterian E4 Plan limits coverage of out of plan services to urgent or emergent cases only.  The services requested were reviewed and determined to be available in plan."

---

[2]The Court notes that the administrative record does not contain the medical record of Plaintiff's consult with Dr. Walinsky.

*Id.* at 11.

On May 9, 2005,  Memorial Sloan Kettering was informed that Plaintiff did not have out-of-network-benefits unless certified by  PHP.  *Id.* at 57.

On May 10, 2005, Plaintiff had surgery performed by Dr. Rusch at Memorial Sloan Kettering.  Plaintiff was diagnosed with left upper lobe adenocarcinoma, or lung cancer.  Defendant's exhibit 3 at 82.  Chemotherapy was recommended and Plaintiff received chemotherapy in New Mexico.  *Id.* at 7.

By letter dated May 24, 2005, Plaintiff appealed the denial of her claim for reimbursement for the May 4, 2005, second opinion by Dr. Rusch and requested that the May 10, 2005, surgery by Dr. Rusch be covered.  *Id.*  at 18.

The first level of appeal was conducted by PHP Medical Director Norman White, M.D.  On June 6, 2005, Dr. White denied the appeal concluding that there was "no benefit certification prior to service by out-of-network provider" and "[s]ervices are available through appropriately qualified in-network providers."[3]  *Id.* at 21.  This decision was communicated to the Plaintiff by letter dated June 7, 2005.  *Id.* at 8.

Plaintiff appealed the decision of the Medical Director and on July 7, 2005, a second level of review was held.  This review consisted of three independent practitioners:  Craig Carter, M.D., a thoracic surgeon and two registered nurses, Diane Schaumburg and Karen Barnes.  The three individuals were paid for their time.  None of the panel members had any prior involvement or vested interest in the outcome of the case.  Plaintiff, who was represented by counsel, testified and submitted

---

[3]Plaintiff does not dispute that this is the result of the appeal but rather disputes the findings.

4

documentation in support of her claim.  Dr. Dennis Angellis, PHP's Chief Medical Officer attended the hearing.

The medical panel recommended the denial of benefits.  The panel concluded that "this was not an emergency or emergent situation."[4]  Defendant's exhibit 4 at 1.  The panel further concluded that Plaintiff's "ability to have this done at Memorial Sloane [sic] Kettering was a function of her sister's influence, and in a normal setting, the time taken for this to have been done in Memorial would probably have been no different than the time taken in New Mexico."  *Id.*  The panel noted that "there is no clear documentation that a VATS approach is superior to a standard muscle-sparing thoracotomy.  There is no documentation giving a mortality advantage to either."[5]  *Id.*

The final decision to accept the recommendation of the medical panel and affirm the denial of benefits was made by Dr. Angellis.  PHP informed Plaintiff of the decision by letter dated July 7, 2005.  Defendant's exhibit 5 at 1-3.

*Legal standard.*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed.R.Civ. P. 56(c).  In determining whether a genuine issue of material fact exits, we view the evidence in light most favorable to the non-movant.  *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001).

*Standard of review.*

---

[4]PHP asserts that in saying "emergent" the medical panel must have meant "urgent" because it already used the word "emergency."

[5]Again, Plaintiff does not dispute that this is what the medical panel concluded; rather Plaintiff disputes the findings.

PHP's health insurance plan is governed by the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1101 et seq. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations and internal quotation marks omitted).   In reviewing a decision to deny benefits the court applies an "'arbitrary and capricious' standard to a plan administrator's actions." *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998).

When reviewing under the arbitrary and capricious standard, the Administrator's decision n not be the only logical one nor even the best one. It need only be sufficiently supported       by facts within [his] knowledge to counter a claim that it was arbitrary or capricious.  The   decision will be upheld unless it is not grounded on *any* reasonable basis.  The reviewing        court need only assure that the administrator's decision falls somewhere on a continuum of        reasonable--even if on the low end. (emphasis in original.)

*Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002) (citation omitted).

In this matter there is no dispute that the plan gives PHP, as plan administrator and fiduciary, the discretion to determine whether to deny a claimant insurance benefits under the plan.  Thus, PHP is operating under an inherent conflict of interest.  The Tenth Circuit has ruled that this conflict of interest must be weighed as a "facto[r] in determining whether there is an abuse of discretion."[6] *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997, 103 (10th Cir. 2004) *citing Firestone*, 389 U.S. at 115 (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. d (1959)).  In *Fought*, the Tenth Circuit adopted the sliding scale approach in determining how to weigh the inherent conflict of interest.  *Fought,* 379 F.3d at 1004.  "Under the [sliding scale] approach, the reviewing court will always apply the arbitrary and capricious standard, but the court must decrease the level of deference

---

[6]In this context, the Tenth Circuit uses the terms "arbitrary and capricious" and "abuse of discretion" interchangeably.  *Fought*, 379 F.3d at 1003, ftnt. No. 2.

given to the conflicted administrator's decision in proportion to the seriousness of the conflict."

*Fought*, 379 F.3d at 100 (citations omitted).  As stated by the Court in *Fought*:

> Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard. (citation omitted.)  In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.

*Fought*, 379 F.3d at 1006.

Thus, the only issue before this Court is whether PHP's denial of Plaintiff's claims is reasonable under the terms of the plan and supported by substantial evidence. Reasonable interpretation of the plan is an objective, not a subjective, determination.  *McGee v. Equicor-Equitable  HCA Corporation*, 953 F.2d 1192, 1202 (10th Cir. 1992); *Firestone*, 489 U.S. at 112 (no deference to either party's interpretation).   "Substantial evidence requires more than a scintilla but less than a preponderance."  *Sandoval v. Aetna Life & Cas. Ins. Co., ,* 967 F.2d 377, 382 (10th Cir. 1992.)  Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).  If the Court finds that the plan fiduciary complied with the terms of the plan and the decision is supported by substantial evidence, summary judgment is proper.  *Finley v. Hewlett Packard Company Employee Benefits Organization Income Protection Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004).

*The Plan's language*.

## VII.    EXCLUSIONS

M.    Covered services obtained from a Non-particpating Provider/Practitioner, except for the following:

> 1.    services which are not available from a Participating Provider/Practitioner and have been approved by PHP **before** services are rendered, or
> 2.    in cases of an emergency, as defined in Section IV.  (Benefits) paragraph A.

of this Agreement.

Defendant's exhibit 1 at 64-65 (emphasis in original).

....

As a Member of PHP, you must carefully follow all procedures and conditions for obtaining care from **specialists and/or Non-participating Providers/Practitioners. This means you must contact your Primary Care Physician first (except for mental health services as specified in this Agreement)** <u>before</u> **going to see a specialist or other Provider/Practitioner**.  You must receive a Referral from your Primary Care Physician for these services.

*Id*. at 7 (emphasis in original).

....

If required medial services are not available from Participating Providers/Practitioners, the Primary **Care** Physician must request and obtain written **Preauthorization** from the PHP **Medical** Director **before** the member may receive such services.  Services of a **Non-participating Provider/Practitioner** will **not be Covered** unless this authorization is obtained prior to receiving the services.  Members **may be liable for charges** resulting from failure to obtain Preauthorization for services provided by the **Non-participating Provider/Practitioner**.

*Id*. at 17. (emphasis in original).

....

**EMERGENCY HEALTH SERVICES** means healthcare procedures, treatments, or services delivered to a Covered person after the sudden onset of what reasonably appears to be a medical condition that manifests itself by symptoms of sufficient severity including severe pain, that the absence of immediate medical attention could reasonably be expected by a reasonable layperson, to result in:
      1.      jeopardy to the person's health...

*Id*. at 101-102.

....

    c.      PHP will provide reimbursement when a Member, acting in good faith, obtains emergency medical care for what reasonably appears to the Member, acting as a reasonable lay person to be an acute condition that requires immediate medical attention, even if the patient's condition is subsequently determined to be non-emergent.

    d.      In determining whether the member acted as a 'reasonable layperson' as described in paragraph c. above, PHP will consider the following factors:

    (1)      a reasonable person's belief that the circumstances required immediate medical care and that could not wait until the next working day or the next available appointment;

    (2)      the time of day the care was provided;

    (3)      the presenting symptoms;

    (4)      any circumstance that prevented the Member from using PHP's established procedures for obtaining Emergency Care.

*Id.* at 22.

....

**Urgent Care** means Medically Necessary healthcare series provided in emergencies or after a Primary Care Physician's normal business hours for **unforeseen** conditions due to illness or injury that are not life-threatening but require prompt medical attention. (emphasis in original.)

*Id.* at 19.

*The New Mexico Administrative Code.*

The New Mexico Administrative Code ("NMAC"), which was presented as an exhibit at the medical review panel, states in part:

    D.      Emergency and urgent care services: Emergency and urgent care services shall include:

    (1) Acute medical care that is available twenty-four hours per day, seven days per week, so that jeopardy to an enrollee's health status that would occur if such services were not received immediate is prevented. Such medical care shall include ambulance or other emergency transportation. In addition, acute medical care shall include, where appropriate, transportation and indemnity payments or service agreements for out of service area or out of network covered in cases where the enrollee cannot reasonably access in-network services or facilities...

(3)   Reimbursement for emergency care and emergency transportation shall not be denied by the health care insurer or [managed health care plan("MHCP")] when the enrollee, who in good faith and who possesses average knowledge of health and medicine, seeks medical care for what reasonably appears to the enrollee to be an acute condition that requires immediate medical attention, even if the patient's condition is subsequently determined to be non-emergent.


(4)   In determining whether the "reasonable layperson" standard...is met and whether care is reimbursable as emergency care, the MHCP shall take the following factors into consideration:(a) a reasonable person's belief that the circumstances required immediate medical care that could not wait until the next working day or next available appointment;(b) the time of day the care was provided; (c) the presenting symptoms; and (d) any circumstances which precluded use of the MHCP's established procedures for obtaining emergency care.

NMAC 13.10.13.9 (D)(2),(3), and (4); Defendant's exhibit 3 at 74-75.

*Legal analysis.*

<u>Count I.</u>

The Plan clearly and repeatedly states that preauthorization is required prior to seeking care

from non-participating providers.  It is undisputed that the Plaintiff did not obtain

preauthorization for the services she wants covered by the Plan.  Thus, according to the terms off

the Plan, it is reasonable to deny Plaintiff's claim.  *Fought* 379 F.3d at 1008 (court is to give

the plan language "its common and ordinary meaning *as a reasonable person in the position*

*of the [plan] participant*, not the actual participant, would have understood the words to mean."

(emphasis in original) (internal quotation marks and citations omitted)).


Plaintiff argues that prior to going to New York, she requested a referral from Dr. Gallant and

Dr. Gallant said he would get a referral.  Plaintiff's argument fails for two reasons.  The Plan requires

the  member to request and **obtain** a referral prior to receiving services.  Plaintiff did not follow the

requirements of the Plan merely by requesting a referral.  Furthermore, Plaintiff's testimony that she

10

requested a referral prior to obtaining services is inconsistent with the administrative record. According to the record, in an event listing created by PHP, it shows that Dr. Gallant requested a "retroactive authorization for PHP member who saw Dr. Valerie Rusch...for second opinion." Defendant's exhibit 3 at 33.  The record also shows that on May 6, 2006, PHP received a fax from Remona at Dr. Gallant's office "req retro approval for member who saw Dr. Valerie Rusch..." *Id.* at 35.  In addition, in her letter to PHP on May 24, 2005, Plaintiff did not indicate that she had sought preauthorization.  *Id.* at 15.  Plaintiff had the opportunity prior to and during the medical review hearing to submit documents supporting her position but did not do so.  Defendant's exhibit 2 at 6,7. Acting as the Plan Administrator, Dr. Angellis had the authority to weigh the evidence and deny the claim.  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (where there is conflicting evidence, plan administrator may base decision on substantial evidence that is adverse to the claim).

Plaintiff further argues that her circumstances were an emergency and thus preauthorization was not required.  It is not for this Court to decide whether Plaintiff's circumstances were an emergency under the Plan.  Rather, it is to decide whether PHP's decision that Plaintiff's condition was not an emergency was reasonable and supported by substantial evidence.

The independent medical panel found that "this was not an emergency or emergent situation." Defendant's exhibit 4 at 1.  When, as in this case, a decision is based on the recommendation of an independent medical panel, the decision cannot be considered arbitrary or capricious.  *Fought,* 379 F.3d at 1015 ("Where...a conflict of interest may impede the plan administrator's impartiality, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation.  *See* 29 U.S.C. § 1001(b)."; *Roach v. Prudential Insurance Brokerage, Inc.*, 62 Fed. Appx. 294, 299, 2003

11

WL 1880641 (10th Cir. 2003) (where plan administrator based decision on recommendation of independent medical reviewers, decision was based on substantial evidence and was not arbitrary or capricious).

Moreover, a plain reading of the Plan supports the medical panel's conclusion and Dr. Angellis' conclusion that Plaintiff's situation was neither an "emergency" nor "urgent." The definition of emergency requires a "sudden onset" of a condition that requires "immediate attention." The definition of urgent requires "unforeseen conditions." By the time Plaintiff traveled to New York, Plaintiff's condition was neither of "sudden onset," nor "unforeseen." Furthermore, in going to New York for a second opinion, Plaintiff demonstrated that her condition did not need "immediate attention."

The Plan also provides coverage for services obtained where, although not an emergency, the Plan member reasonably perceives it as such. Plaintiff argued at the medical panel hearing that she "thought this was an emergency." Defendant's exhibit 2 at 8. The medical review panel found that "[d]espite Ms. Cassell's anxiety, this was not an emergency or emergent situation." Defendant's exhibit 4 at 1. And, as discussed above, Dr. Angellis' adopted the medical review panel's decision. Defendant's exhibit 5 at 2. His decision must be upheld if there is any reasonable basis for Dr. Angellis' conclusion. *Nance,* 294 F.3d at 1269.

The record demonstrates a reasonable basis for Dr. Angellis' conclusion. When the Plaintiff saw Dr. Bronitsky on April 26, 2005, he recommended surgery. Rather than accepting immediate care, Plaintiff wanted to:

> "think this over. We are scheduling a PET scan. I am not sure when it will be done and I will see her back in 2-3 weeks or next week if she wants to talk about it further..."

Defendant's exhibit 3 at 130.

12

Plaintiff then flew to New York City and consulted with physicians at Memorial Sloan Kettering eight days after seeing Dr. Bronitsky.  Plaintiff's conduct of waiting eight days to get a second opinion and longer for surgery in New York demonstrates that Plaintiff did not perceive her condition as emergent.  Defendant's exhibit 1 at 22 (determination of whether the member acted as a "reasonable layperson" is to be made considering the time of day care was provided, whether care could not wait until the next working day and whether PHP's ordinary emergency services could have been utilized.)

Plaintiff asserts that PHP did not consider the factors in the Plan for evaluating the reasonableness of Plaintiff's perception that her situation was an emergency.  This argument is speculative.  The record does not demonstrate that the factors were not considered.  Moreover, the record is to the contrary.  Plaintiff made the argument at the hearing that she thought her situation was an emergency.  Dr. Angellis attended the hearing.  The medical review panel recommendation specifically mentions Plaintiff's anxiety and the letter adopting the recommendation mentions that Plaintiff's presentation was considered as well has her appeal package and summary of benefits. Defendant's exhibit 4 at 1; Defendant's exhibit 5 at 2.

Moreover, ERISA does not require that all factors and evidence be mentioned in the decision. *Abatie v. Alta Health & Life Ins. Co*., 421 F.3d 1053, 1064 (9th Cir. 2005) ("We hold that a "full and fair review," 29 U.S.C. § 1133(2), does not demand that an ERISA administrator recite every piece of evidence somehow relevant to its decision or write a treatise as to every claim that comes from it."). Furthermore, there is no requirement that every argument be addressed.  29 CFR § 2560.503-1(j) (final notification shall set forth the specific reason(s) for the adverse determination).

To conclude, the Court finds that Plaintiff's reliance on *Brown v. Blue Cross & Blue Shield*

13

*of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990) is misplaced.  The Eleventh Circuit has adopted a standard of review that the Tenth Circuit has specifically rejected. *Chambers v. Family Health Plan Corporation*, 100 F.3d 818, 826 (10th Cir. 1996) (specifically rejecting the "presumptively void" test in *Brown*).  In *Brown*, the Court states when there is an inherent conflict of interest, "the burden shifts to the fiduciary to prove that its interpretation of the plan provisions committed to its discretion was not tainted by self-interest." *Brown*, 898 F.2d at 1566. As discussed above, the Tenth Circuit standard of review requires the fiduciary to "demonstrate that its interpretation of the terms of the plan is reasonable and that its application of these terms to the claimant is supported by substantial evidence." *Fought*, 379 F.3d at 1005.  In addition, in *Brown,* the decision to deny benefits was not supported by the independent evaluation of a medical panel as is the case in this matter.  *Id.* at 1571-72.

Because no genuine issue of material fact exists regarding whether PHP arbitarily or capriciously denied Plaintiff benefits, PHP is entitled to summary judgment.

<u>Count II.</u>

In Count I  Plaintiff seeks benefits from the Plan pursuant to 29 U.S.C. § 1132.  Complaint at ¶ 44.  Pursuant to the ERISA statute, a claim for benefits is brought under 29 U.S.C. § 1132(a)(1)(B). In Count II Plaintiff asserts a claim for breach of fiduciary duty.  *Id.* at 7.  A breach of fiduciary duty is brought pursuant to 29 U.S.C. § 1132(a)(3).  Federal courts have concluded that when a Plaintiff states a claim for relief under 29 U.S.C. § 1132(a)(1)(B), the plaintiff cannot maintain simultaneously a claim under 29 U.S.C. § 1132(a)(3).  *Varity Corp v. Howe,* 516 U.S. 489, 515 (1996)*; Lefler v. United Healthcare of Utah*, *Inc*., 162 F. Supp. 2d 1310, 1324 (D. Utah 2001); *Moore v. Berg Enterprises, Inc*., 201 F.3d 448, *2 (10th Cir. 1999) (unpublished); *Marks v. Newcourt Credit Group, Inc*. 342 F.2d 444 (6th Cir. 2002). Thus, Plaintiff's claim in Count II for breach of fiduciary duty must

14

be dismissed.

### Count III.

In Count III, Plaintiff alleges that Defendant failed to provide a full and fair review of her claim for benefits in violation of 29 U.S.C. § 1133(2). The cited statute provides that "[i]n accordance with regulations of the Secretary, every employee benefit plan shall...afford a reasonable opportunity to any participate whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 20 U.S.C. § 1133(2). Plaintiff contends that she was denied a full and fair review because the letters denying her claim did not specifically address her perceived emergency argument. As discussed above, a full and fair review does not require that an ERISA administrator cite to all the evidence in the record or that every argument be addressed. "[R]eceiving a full and fair review requires knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision. *Sandoval* 967 F.2d at 382 (10th Cir. 1992) (internal quotation marks and citations omitted.) Again, as discussed above, Dr. Angellis heard Plaintiff's argument that she perceived her situation as an emergency. To say he did not consider it is speculative. In addition PHP complied with the regulations governing "Manner and content of notification of benefit determination on review." 29 C.R.R. § 2560.503-1(j). Thus, Plaintiff's Count III must be dismissed.

### Count IV.

Count IV of Plaintiff's Complaint is a claim for attorneys' fees under ERISA. Complaint at 7-8. ERISA provides that "[i]n any action under [§ 1332]..., the court in its discretion may allow a

reasonable attorney's fee and costs of action to either party." 29 U.S.C. 1132(g)(1).  As Plaintiff is not a prevailing party, Plaintiff is not entitled to attorney's fees.  *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 89 n. 14 (1982); *Phelps v. U.S. West, Inc.,* 1998 WL 165117, at *2 (10th Cir. 1998).  Plaintiff's Count IV must be dismissed.

*Affidavits of Dr. Snyder.*

Plaintiff offers the affidavit of David Snyder, M.D.  It is undisputed that this document is not part of the administrative record.  The Court notes that there is a letter dated June 27, 2005, from Dr. Snyder in the administrative record.  Defendant's exhibit 3 at 7.  The affidavit of Dr. Snyder expands on the letter and states opinions that were not in the letter.  The affidavit of Dr. Snyder, with these new opinions were not available to Dr. Angellis when Dr. Angellis made the decision to deny benefits.  Thus, the affidavit of Dr. Snyder must be stricken and will not be considered by the Court.  *Sandoval,* 967 F.2d at 380 ("In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision.)

**IT IS THEREFORE ORDERED AND ADJUDGED** that PHP's Motion for Summary Judgment is granted, Counts I, II, III and IV are dismissed with prejudice and Plaintiff's Complaint and all the causes of action therein are dismissed with prejudice.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**